IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02804-MSK-KLM

ARTHUR SANCHEZ,

      Plaintiff,

v.

DETECTIVE JOHN H. BAUER, in His Individual and Official Capacities,
DETECTIVE NICHOLAS E. ROGERS, in His Individual and Official Capacities,
DETECTIVE JOHN G. ROBLEDO, in His Individual and Official Capacities,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss** [#32][1] (the "Motion"). Plaintiff, who is proceeding pro se,[2] filed a Response [#48] in opposition to the Motion, and Defendants filed a Reply [#49]. The Motion is thus ripe for review. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c)(3), the Motion is referred to the undersigned for recommendation [#34]. Having reviewed the entire case file and being sufficiently advised, the Court **RECOMMENDS** that the Motion [#32] be **GRANTED.**

---

[1] "[#32]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF). This convention is used throughout the Recommendation.

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## I.  Summary of the Case

The following allegations from the Second Amended Complaint[3] [#12] are accepted as true for the purpose of determining the Motion [#32].  Plaintiff is presently incarcerated at the Sterling Correctional Facility in Sterling, Colorado, although the events underlying this lawsuit occurred prior to Plaintiff's term of incarceration.  *See Order* [#15] at 1-2.

On October 16, 2013, around 11:00 a.m., three Denver Police Detectives – Defendant John Bauer ("Bauer"), Defendant John Robledo ("Robledo"), and Defendant Nicholas Rogers ("Rogers") – were staking out a black pick-up truck in a Burger King parking lot.  *Second Am. Compl.* [#12] at 4, 7.  Without taking any action regarding the truck, Defendants stopped a car containing Plaintiff by surrounding it with their vehicles.  *Id.* at 4.  Defendants exited their vehicles without identifying themselves and approached Plaintiff's car with weapons drawn and pointed at him.  *Id.*  Another officer, C. Jones ("Jones"), who is not named in this suit, arrived in a Denver Police squad car, exited his vehicle, and also approached Plaintiff's car with a gun in hand.  *Id.*

Defendant Rogers opened the door of Plaintiff's car, pulled him from the car by his shirt, and forced him to the ground.  *Id.*  Officer Jones also participated in this act.  *Id.*  Plaintiff offered no resistance.  *Id.*  Meanwhile, Defendant Robledo stood in front of the car, and Defendant Bauer stood by the driver's side, both keeping their firearms pointed at Plaintiff.  *Id.*  Defendant Rogers and Officer Jones handcuffed Plaintiff and searched him, finding nothing.  *Id.*

---

[3]  Both the form used by Plaintiff and the Court's electronic filing system (CM/ECF) refer to document [#12] as "1st Amended Complaint." However, because the operative complaint is actually the Second Amended Complaint [#12], the Court refers to it accordingly.

Defendant Robledo watched Plaintiff on the ground while Defendants Rogers and Bauer searched the car with Officer Jones.  *Id.*  Again they found nothing.  *Id.*  Defendant Robledo pulled Plaintiff to a standing position by his handcuffs, causing "excruciating pain."  *Id.*  Defendant Robledo then forced Plaintiff to remove some of his clothing[4] while executing another search without result.  *Id.*  Defendant Robledo conducted yet another search of Plaintiff's body after taking him to a police car.  *Id.*

Defendant Robledo drove Plaintiff to the police station and led him to a room where he remained in restraints for about twenty-five minutes.  *Id.*  Around 12:00 p.m., Defendants Bauer and Rogers arrived at the police station.  *Id.*  All three Defendants then took Plaintiff into the hallway and requested that he remove his clothing so that they could perform a strip search.  *Id.* at 4-5.  The three Defendants began the strip search before forcing Plaintiff back into the room.[5]  *Id.* at 8.  The action in the hallway was recorded by video.  *Id.*

Defendant Rogers then gave instructions to "[u]ncuff [P]laintiff and move the cuffs to his front."  *Id.* at 5.  Defendant Robledo complied.  *Id.*  Defendant Rogers further ordered the others to "bend him over that chair."  *Id.*  Defendants Robledo and Bauer grabbed Plaintiff and forced him over the chair, pressing his face firmly against the desk and causing him "excruciating pain."  *Id.*  Defendant Rogers, wearing rubber gloves, pulled down Plaintiff's pants and underwear while Defendants Robledo and Bauer restrained him.  *Id.*  Defendant Rogers then reached into Plaintiff's anus with his fingers, laughed, then stated

---

[4] Plaintiff does not specify what clothing was removed or claim that a strip search occurred at this juncture.

[5] Again, Plaintiff does not specify what clothing was removed.

"I got it."[6]  *Id.*

As a result of these events, Plaintiff asserts two claims pursuant to 42 U.S.C. § 1983.  In his first claim, Plaintiff states that excessive force was used against him by each Defendant in the events leading up to and following his arrest.  *Id.* at 6.  In his second claim, he alleges that the numerous searches and seizures conducted by Defendants were unreasonable.  *Id.* at 7-8.  As a result, he seeks (1) $500,000 in compensatory damages from Defendants in their official capacities,[7] (2) $10,000 in punitive damages from each Defendant in his personal capacity, (3) attorney fees pursuant to 42 U.S.C. § 1988, (4) an injunction[8] "enforcing Denver Police to obtain [a] warrant in all future case[ ]s and to refrain from unnecessary and excessive force," (5) a declaratory judgment holding that Latinos are subject to discrimination based on their ethnicity, (6) a declaratory judgment holding that the "acts and omissions described" regarding October 13, 2013, violated Plaintiff's constitutional rights, and (7) any other relief the Court finds necessary.  *Id.* at 10.  In the Motion [#32], Defendants seek dismissal of all claims pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  Standard of Review

### A.     Fed. R. Civ. P. 12(b)(1)

---

[6]  The Second Amended Complaint [#12] does not specify what "it" was.

[7]  In the Second Amended Complaint [#12], Plaintiff seeks this relief from the City and County of Denver, which has been dismissed as a party to this suit by Order [#15].  However, because the suit is also brought against Denver Police detectives in their official capacities, which is treated as a suit against the entity, this request is liberally construed as seeking damages from Defendants in their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (ruling that a suit against an officer in his official capacity "is, in all respects other than name, to be treated as a suit against the entity").

[8]  Plaintiff requests declaratory judgment on this issue, but it is better construed as injunctive relief.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) attacks a court's subject matter jurisdiction. The determination of a court's jurisdiction over the subject is a threshold question of law. *Madsen v. United States ex. rel. United States Army Corps of Eng'rs*, 841 F.2d 1011, 1012 (10th Cir. 1987). The objection that a federal court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be raised by a party, or by a court on its own initiative, at any stage in the litigation. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). If at any time, the Court determines that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3); *Arbaugh*, 546 U.S. at 506.

**B.      Fed. R. Civ. P. 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the

plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][ ]that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

## III.  Analysis

### A.      Subject Matter Jurisdiction

Defendants do not raise a subject matter jurisdiction argument pursuant to Rule 12(b)(1) in their Motion [#32]. However, the Court must consider the question sua sponte when it comes to the Court's attention that the Court may lack jurisdiction over a matter. *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988); *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1293 n.6 (D. Colo. 2009). Accordingly, the Court first considers whether it has subject matter jurisdiction over Plaintiff's requests for declaratory relief. *See Herrara v. Alliant Specialty Ins. Servs., Inc.*, No. 11-00050-REB-CBS, 2012 WL 959405,

at *3 (D. Colo. Mar. 21, 2012) (stating that issues of subject matter jurisdiction "must be resolved before the court may address other issues presented in the motion").

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, "validly confer[s] jurisdiction on federal courts to issue declaratory judgments in appropriate cases." *Calderon v. Ashmus*, 523 U.S. 740, 745 (1998). The DJA explicitly incorporates the case or controversy requirement of the Constitution by stating: "In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Court therefore considers the issue of jurisdiction pursuant to Rule 12(b)(1) with respect to Plaintiff's requests for declaratory judgment. *See, e.g.*, *Van Deelen v. Fairchild*, No. 05-2017, 2005 WL 3263885, at *7 (D. Kan. Dec. 1, 2005).

"Where a plaintiff seeks both an injunction and declaratory relief, the district court has a duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of an injunction." *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) (internal quotations omitted) (quoting *Super Tire Eng'g Co. v. McCorckle*, 416 U.S. 115, 121 (1974)). "It is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff." *Id.* (citations omitted). In other words, "where a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed in his complaint." *Id.*

To establish that a case or controversy exists, Plaintiff must demonstrate that the

controversy is: (1) definite, concrete, and touches on the legal relations of the parties, and (2) sufficiently immediate and real. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937); *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). In short, "[t]he ultimate question is whether declaratory relief will have some effect in the real world." *Van Deelen*, 2005 WL 3263885, at *7 (citing *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000)). The mere fact that Plaintiff's requested relief would give Plaintiff the satisfaction that he was wronged in the past does not create an actual, live controversy. *Id.* (citing *Bauchman v. West High Sch.*, 132 F.3d 542, 548-49 (10th Cir. 1997) (holding that the case or controversy requirement was not met because the plaintiff's requested declaratory relief was moot)). Further, "[e]ven if subject matter jurisdiction exists, the Court has unique and substantial discretion to determine the propriety of declaratory judgment [.]" *Id.* (citing *Exec. Risk Indem. Inc. v. Sprint Corp.*, 282 F. Supp. 2d 1196, 1202 (D. Kan. 2003)).

Plaintiff seeks a declaratory judgment holding that "the acts and omissions described herein violated [P]laintiff's right[ ]s." *Second Am. Compl.* [#12] at 10. Thus, Plaintiff seeks a declaration that his constitutional rights were violated by Defendants. If the Court were to grant his request, the declaratory judgment would not "affect[ ] the behavior of [D]efendant[s] toward [P]laintiff," because Defendants would not be required to take any action. *See Rhodes v. Stewart*, 488 U.S. 1, 4 (1988). In other words, Plaintiff is seeking a retrospective opinion that Defendants wrongly harmed him, which is an impermissible use of a declaratory judgment. *See Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (holding that a claim for declaratory relief was moot where the "primary claim of a present interest in the controversy is that [the plaintiff] will obtain emotional satisfaction from [the] ruling"); *Green*

*v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) ( "This 'legal interest' must be more than simply the satisfaction of a declaration that a person was wronged."). Thus, there is no case or controversy with regard to Plaintiff's requested declaratory relief regarding past alleged wrongs.

Accordingly, the Court **recommends** that Plaintiff's request for retrospective declaratory relief be **dismissed without prejudice** for lack of subject matter jurisdiction. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . , the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim").

## B.   Documents Submitted by the Parties

Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, the Court may consider documents outside of the complaint on a motion to dismiss in three instances. First, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000). Second, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Third, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in his complaint. *GFF Corp. v. Associated Wholesale Grocers*,

130 F.3d 1381, 1384 (10th Cir. 1997). Even if a document meets the criteria above, it is within the discretion of the Court whether to consider it. *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999). The failure to convert a 12(b)(6) motion to one for summary judgment where a court does not exclude outside materials is reversible error unless the dismissal can be justified without considering the outside materials. *Id.* (citing *Brown v. Zavaras*, 63 F.3d 967, 970 (10th Cir. 1995)).

Plaintiff attached a series of exhibits to his original Complaint [#1] and Amended Complaint [#5]. *See Compl.* [#1] at 19-30 (lettered exhibits A-I, L, M, and P). These exhibits are neither included nor explicitly incorporated in his Second Amended Complaint [#12], although some of them are referenced. *See, e.g.*, *Second Am. Compl.* [#12] at 6 (citing exhibits C, F, and G from the Complaint [#1]). Defendants argue that all of the documents attached to the original Complaint [#1] are "central to Plaintiff's claims" and should be considered when resolving the Motion. [#32] at 6 n.4. Here, the Second Amended Complaint [#12] addresses only the documents referred to as Exhibit C (page 1 of a supplementary report of the incident written by Defendant Bauer), Exhibit E (page 3 of the same report), Exhibit F (a supplementary report written by Defendant Robledo), Exhibit G (a witness statement given by Defendant Rogers), and Exhibit H (a Denver Police Department form authorizing the strip search of Plaintiff). *Second Am. Compl.* [#12] at 6. Of these documents, only Exhibit G is referenced more than once. *See Osei v. Brooks*, No. 11-cv-01135-PAB-KMT, 2012 WL 1079465, at *2 (D. Colo. March 5, 2012) (declining to consider a videotape that was only mentioned once in the complaint). Additionally, none of Plaintiff's claims specifically rely on the contents of the exhibits, which are therefore not

central to his claims.  Therefore, none of these exhibits will be considered at this stage.[9]
*See GFF Corp.*, 130 F.3d at 1384.

Defendants also ask the Court to take judicial notice of their Exhibit A, which is a state court document detailing Plaintiff's underlying conviction, namely a guilty plea for possession of a controlled substance with intent to distribute as defined by Colo. Rev. Stat. § 18-18-405.  *Motion* [#33] at 2 n.2; *see generally Motion, Ex. A* [#33-1].  Plaintiff has not responded to the inclusion of this document specifically but states that he "is not challenging the constitutional validity of his conviction."  *Response* [#48] at 13.  The Court therefore accepts Exhibit A to the Motion for its review in making this recommendation. *See Tal*, 453 F.3d at 1265 n.24.

Also, Plaintiff adds a number of additional factual allegations about his claim in his Response.  *See, e.g.*, [#48] at 16 (adding factual allegations regarding excessive force claims).  These are not properly considered within the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Cnty. of  Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002) ("In deciding a Rule 12(b)(6) motion, a federal court may only consider facts alleged within the complaint.") (citation omitted).  Therefore, Plaintiff's additional factual allegations in his Response will not be considered here.  *Warren v. City of Cortez*,  No. 06-cv-00023-REB-CBS, 2007 WL 128808, at *2 n.2 (D. Colo. Jan 12, 2007) (Declining to address "a host of new and more detailed facts" appended to responses to Rule 12(b)(6) motion).

---

[9] Defendants also attached a more legible copy of Plaintiff's Exhibit D to their Motion.  *See generally Motion, Ex. B* [#33-2].  For the same reasons, this exhibit will not be considered.  *See GFF Corp.*, 130 F.3d at 1384.

## C.      Qualified Immunity

Defendants assert qualified immunity from Plaintiff's claims against them.  *Motion* [#32] at 2, 8.   Therefore the Court first examines whether Plaintiff's Second Amended Complaint survives the requirements of Fed. R. Civ. P. 12(b)(6).  *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003) ("Since [Defendants] raised the defense of qualified immunity in [their] [M]otion to [D]ismiss, we first examine whether [Plaintiff] asserted a violation of federal law in [his] complaint.").   Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities for monetary damages.  *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982) ("[G]overnment officials . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

A government official is entitled to qualified immunity from liability for civil damages when his or her allegedly unlawful conduct did not violate any of the plaintiff's statutory or constitutional rights that (1) were "clearly established" at the time of the conduct, and (2) would have been known to a reasonable person in the official's position.  *Harlow*, 457 U.S. at 818; *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that although qualified immunity determination involves a two-part inquiry, if the plaintiff fails either inquiry reviewed in any order, no further analysis need be undertaken and qualified immunity is appropriate).  The Supreme Court has stated that "[f]or executive officials in general . . . our cases make plain that qualified immunity represents the norm."  *Id.* at 807.   Thus, a government official is entitled to qualified immunity in "[a]ll but the most exceptional cases." *Harris v. Bd. of Educ. of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).

### 1.    Search and Seizure Claims

Plaintiff alleges that, at various times on October 16, 2013, he was subjected to unreasonable searches and seizures in violation of his Fourth Amendment rights.  *See Second Am. Compl.* [#12] at 6.  In addition to asserting qualified immunity from Plaintiff's unreasonable search and seizure claims, Defendants argue that those claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). [#32] at 7.

*Heck* involved a § 1983 claim arising out of alleged unlawful acts by state prosecutors and police officers which led to the plaintiff's arrest and ultimate conviction. 512 U.S. at 479.  In *Heck*, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. If so, the court must dismiss the complaint "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*

"[A] state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).  However, "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed . . . ." *Heck*, 512 U.S. at 487.

The Tenth Circuit applies a case-by-case approach to the application of *Heck* to allegedly invalid searches and seizures. *Garza v. Burnett*, 672 F.3d 1217, 1220 (10th Cir.

2012).  Claims of illegal search and seizure are not barred by *Heck* if "ultimate success on them would not necessarily question the validity of a conviction."  *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 558 (10th Cir. 1999) (quoting *Heck*,  512 U.S. at 486 n.6).

"The starting point for the application of *Heck* . . . is the existence of an underlying conviction or sentence that is tied to the conduct alleged in the § 1983 action."  *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007).  "The key inquiry is whether a plaintiff's success in the § 1983 action would necessarily invalidate that underlying conviction. To make this determination, the court must consider the elements of the criminal offense of which the § 1983 plaintiff was convicted."  *Strepka v. Jonsgaard*, No. 10-cv-00320-PAB-KMT, 2010 WL 4932723, at *4 (citing *Martinez v. City of Albuquerque*, 184 F.3d 1123, 1125 (10th Cir. 1999) (noting that the lawfulness of the arrest in the Supreme Court's hypothetical was a necessary element of the criminal offense of resisting arrest)).

It is undisputed that Plaintiff pled guilty to possession of a controlled substance with intent to distribute, as defined by Colo. Rev. Stat. § in Colorado case number 2013CR5373.  *See generally Motion, Ex. A* [#33-1].  Plaintiff does not contend that this conviction was overturned or otherwise invalidated.  *Response* [#48] at 13.  Defendants claim that, should Plaintiff prevail on any of his search and seizure claims, it would necessarily imply the invalidity of his guilty plea.  *Motion* [#33] at 16.

Plaintiff asserts that because he does not seek release from prison or shortening of his sentence, these claims are not barred.  *Response* [#48] at 13.  This argument is invalid because *Heck* bars claims that imply invalidity "no matter the relief sought (damages or equitable relief)."  *Wilkinson*, 544 U.S. at 81-82.

Plaintiff broadly asserts eight incidents where an allegedly unreasonable search or

seizure occurred: (1) the initial stop of his vehicle, (2) an 11:00 a.m. pat-down search, (3) the 11:05 a.m. search of the car, (4) the 11:10 a.m. cell phone search, (5) the 11:15 pat-down search, (6) an 11:20 a.m. pat-down search, (7) the 12:00 p.m. first strip search, and (8) the 12:05 p.m. second strip search.  Because they involve the same legal principles, the three pat-down searches are examined together.

### a.    Initial Stop of Plaintiff's Car

First, Plaintiff asserts that there was no probable cause for the initial stop of his car, and hence, his arrest was illegal.  *Second Am. Compl.* [#12] at 7.  Contrary to Defendants' assertions, *see Reply* [#49] at 11, *Heck* does not universally prohibit illegal arrest claims brought under § 1983.  *Beck*, 195 F.3d at 558-559 (citing *Heck*, 512 U.S. at 486 n.6).  However, there are two potential bars to an illegal arrest claim under *Heck*.  First, an illegal arrest claim is barred if the validity of arrest itself is one of the elements of the underlying crime.  *Id.*  Second, there are "rare situation[s]" where all of the evidence used to convict was obtained as a result of an allegedly illegal arrest.  *See Laurino v. Tate*, 220 F.3d 1213, 1217 n.3 (10th Cir. 2000); *Trusdale v. Bell*, 85 F. App'x 691, 693 (10th Cir. 2003).  The Tenth Circuit treats plea agreements as convictions for purposes of *Heck*.  *See Johnson v. Pottawotomie Tribal Police Dep't*, 411 F. App'x 195, 199 (10th Cir. 2011).  Because ruling that the arrest was illegal would invalidate the seizure of evidence resulting in Plaintiff's underlying conviction, his claim is barred by *Heck*.  *See Johnson*, 411 F. App'x at 199 (illegal arrest claim is barred by *Heck* where plaintiff pled guilty to drug possession based on evidence found during his allegedly illegal arrest); *cf. Sexton v. Hickenlooper*, No. 13-cv-01008-MSK-KMT, 2014 WL 1091936, at *4 (D. Colo. Mar. 19, 2014) (illegal arrest claim is allowed to proceed where arrestee alleged a lack of probable cause and pled guilty to a

separate offense from that for which he was arrested).

Accordingly, the Court **recommends** that Plaintiff's unreasonable search and seizure claim regarding the initial stop of his vehicle be **dismissed without prejudice** as barred by *Heck v. Humphrey*. *See Dade v. Griffard*, No. 11-cv-03177-BNB, 2012 WL 27790, at *3, *4 (D. Colo. Jan. 5, 2012) (stating that application of *Heck* results in dismissal without prejudice).

### b. Pat-down Searches

The Fourth Amendment normally requires that law enforcement officers obtain a warrant based on probable cause before conducting a search. U.S. Const. amend. IV. However, there are limited exceptions to that rule, one of which is that officers may conduct a warrantless search of a person when it is incident to a lawful arrest of that person. *United States v. McKissick*, 204 F.3d 1282, 1296 (10th Cir. 2000) (quoting *United States v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir. 1998) (further citations omitted)). Such a search is not limited to a frisk for weapons, but may have as its purpose a search for evidence of a crime. *McKissick*, 204 F.3d at 1296 (citing *United States v. Simpson*, 453 F.2d 1028, 1030 (10th Cir. 1972)). A favorable adjudication of the merits of the claim would require the Court to find that the searches of Plaintiff were not incident to a lawful arrest, necessarily implying that Plaintiff's arrest was unlawful and calling his conviction into question. *See McKissick*, 204 F.3d at 1296. For the reasons discussed above, such a ruling is improper under *Heck*.

Accordingly, the Court **recommends** that Plaintiff's unreasonable search and seizure claims regarding the pat-down searches be **dismissed without prejudice** as barred by *Heck v. Humphrey*. *See Dade*, 2012 WL 27790, at *3, *4 (stating that

application of *Heck* results in dismissal without prejudice).

### c.   Search of the Car

As stated above, warrantless searches are presumed invalid unless a specific exception applies.  One such exception is that law enforcement officers may conduct a warrantless search of an automobile if they have probable cause to believe that it contains evidence of a crime or contraband.  *United States v. Burgess*, 576 F.3d 1078, 1087 (10th Cir. 2009).  The search may extend to "every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982).  Another exception is that police may search a vehicle incident to a recent occupant's arrest if (1) the arrestee is within reaching distance of the passenger compartment at the time of the search or (2) it is reasonable to believe the vehicle contains evidence of the offense for which the arrestee was arrested.  *Arizona v. Gant*, 556 U.S. 332, 351 (2009).

Plaintiff contends that Defendants Rogers and Bauer had no probable cause to search his vehicle.  *Second Am. Compl.* [#12] at 7.  Defendants contend that they had probable cause to search Plaintiff's car or, alternately, that they believed that there was contraband in plain view.  *Motion* [#33] at 8.  They base these arguments on supporting exhibits which, for reasons stated above, are not considered in this recommendation.  Thus, the Court is left with Defendants' contention that the claims are barred by *Heck*, presumably based on Plaintiff's guilty plea.  *Id.* at 16.  On its own, a guilty plea does not establish the existence of probable cause.  *Sexton*, 2014 WL 1091936, at *4.  Plaintiff alleges, and Defendants concede, that nothing was seized as a result of the search of Plaintiff's car.  *Second Am. Compl.* [#12] at 4; *Motion* [#33] at 8.  Defendants assert that the only evidence which led to Plaintiff's guilty plea, a controlled substance as defined by

Colo. Rev. Stat. § 18-18-405, was seized in the second strip search. *Reply* [#49] at 11. As such, finding that Defendants lacked probable cause to search Plaintiff's car or that there was no evidence of contraband in plain view would not imply the invalidity of his conviction. Therefore, the claim is not barred by *Heck v. Humphrey*.

Plaintiff alleges that there was no probable cause for the search of his vehicle. *Second Am. Compl.* [#12] at 4. However, this allegation is conclusory and unsubstantiated. Plaintiff seems to rely only on the fact that "nothing was found" to create the impression that the search was *per se* unreasonable. *Id.* As noted by Defendants, there is no legal support for this contention. *Motion* [#33] at 8; *See Anderson v. Creighton*, 483 U.S. 635, 643-44 (1987) ("We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable."); *Illinois v. Gates*, 462 U.S. 213, 231 (1983) ("'In dealing with probable cause, . . . as the very name implies, we deal with probabilities.'" (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949))). As such, Plaintiff has not alleged a sufficient factual background to conclude that "no reasonably competent official would have found indicia of probable cause." *Coburn v. Nordeen*, 72 F. App'x 744, 747 (10th Cir. 2003); *see also Keough v. Packard*, No. 13-cv-02485-REB-KLM, 2014 WL 4627193, at *7 (D. Colo. Sept. 15, 2014) (holding that lack of probable cause cannot be based on an unsubstantiated legal conclusion) (citing *Giacalone v. Pa. Ins. Fraud Prevention Auth.*, No. 3:11-CV-01647, 2012 WL 629437, at *4 (M.D. Pa. Feb. 27, 2012) ("Plaintiffs' insistence that there was no probable cause for the search warrant, without any further factual allegations, is not enough to overcome the pleading

standards set forth in Rule 8 of the Federal Rules of Civil Procedure." (footnote omitted));

*Ghaster v. City of Rocky River*, No. 1:09CV02080, 2010 WL 2802682, at *5 (N.D. Ohio July

13, 2010) (citation omitted) (same); *Moore v. Miami-Dade Cnty.*, 502 F. Supp. 2d 1224,

1234 (S.D. Fla. 2007) (citation omitted) (same)) (further citations omitted).

To be entitled to qualified immunity, Defendants need only to have possessed a

reasonable belief that probable cause existed. *Coburn*, 72 F. App'x at 746 (10th Cir. 2003)

(citing *Anderson*, 483 U.S. at 643-44).  Because Plaintiff has not sufficiently alleged facts

suggesting that Defendants did not reasonably believe probable cause existed to search

his car, he has not stated that a constitutional violation occurred. *See Coburn*, 72 F. App'x

at 747.  Thus, Defendants are entitled to qualified immunity. *See Harlow*, 457 U.S. at 818.

The Court therefore **recommends** that Plaintiff's claim regarding the search of his car be

**dismissed without prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir.

1990) (stating that prejudice should not attach when the plaintiff has made allegations

"which, upon further investigation and development, could raise substantial issues").

### d.    Cell Phone Search

Plaintiff alleges that Defendant Rogers took his phone out of the car, "went through

its contents," and "answered the phone." *Second Am. Compl.* [#12] at 7.  Defendant

Rogers concedes that the Supreme Court has decided that cell phones cannot be searched

incident to an arrest absent case-specific facts such as exigent circumstances. *Motion*

[#33] at 11 (citing *Riley v. California*, 134 S. Ct. 2473, 2494-95 (2014)).  He argues instead

that the right asserted, i.e. the right to privacy of cell phone data, was not clearly

established at the time of the alleged violation. *Id.*

Because Defendant Rogers asserts qualified immunity, the Court must decide

whether Plaintiff has asserted a violation of his constitutional rights and whether Defendant Rogers's conduct violated "clearly established law." *Casey v. City of Fed. Heights*, 509 F.3d 1276, 1283 (10th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 207 (2001)). A rule is clearly established when there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. *Casey*, 509 F.3d at 1284 (quotation marks and citation omitted). The salient question is whether the state of the law at the time of the conduct gave Defendant Rogers fair warning that his alleged conduct was unconstitutional. *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

On October 16, 2013, there was no published Tenth Circuit or Supreme Court opinion addressing the application of the Fourth Amendment to cell phone data incident to arrest. *But see Silvan W. v. Briggs*, 309 F. App'x 216, 225 (10th Cir. 2009) (citing *United States v. Finley*, 477 F.3d 250, 260 (5th Cir. 2007)) (finding that the search of a cell phone incident to a lawful arrest was permissible). The weight of authority from other courts at the time also cuts against Plaintiff's statement that the warrantless search violated clearly established law. *United States v. Wurie*, 728 F.3d 1, 5-6 (1st Cir. 2013) (decided May 17, 2013) (concluding that a majority of courts at the time had upheld warrantless cell phone data searches). The Court's review of case law confirms that until *Reilly* was decided months after the alleged misconduct, there was no clearly established law that Defendant Rogers violated. Accordingly Defendant Rogers is entitled to qualified immunity from the claim regarding the search of Plaintiff's cell phone. *See Harlow*, 457 U.S. at 818. The Court therefore **recommends** that Plaintiff's claim regarding the search of his cell phone

be **dismissed with prejudice**.  *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (stating that due to heightened concerns when the plaintiff is proceeding pro se, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend").

        **e.**    **First Strip Search**

Although the Tenth Circuit has not defined what constitutes a strip search, Colorado criminal statutes define a strip search as "having an arrested person remove or arrange some or all of his or her clothing so as to permit a visual inspection of the genitals, buttocks, anus, or female breasts of such person."  *People v. King*, 292 P.3d 959, 962 (Colo. App. 2011)  (citing Colo. Rev. Stat. § 16-3-405(2)); *see also Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 373 (2009) (stating that school administrator's order to student to remove her clothes down to underwear and "pull out" her bra and elastic band on underwear can fairly be described as a "strip search"); *Amaechi v. West*, 237 F.3d 356, 365 (4th Cir. 2001) (accepting the Virginia statutory law definition of strip search from Va. Code Ann. § 19.2-59.1(F), which reads, "[s]trip search shall mean having an arrested person remove or arrange some or all of his clothing so as to permit a visual inspection of the genitals, buttocks, anus, female breasts, or undergarments of such person").  Because the search was conducted under Colorado law, the Colorado statutory definition is used for this discussion.

Defendants argue that it is unclear from the Second Amended Complaint [#12] whether or not a strip search occurred in the police station hallway.  *Motion* [#33] at 13.

Plaintiff alleges that Defendants Bauer and Rogers told Defendant Robledo and Plaintiff to step into the hallway to do a strip search. *Second Am. Compl.* [#12] at 4. Plaintiff alleges that all Defendants "want[ed] Plaintiff to remove his clothing." *Id.* Without stating that a search occurred, he alleges that they forced him back into the adjacent room. *Id.* at 5. Later, Plaintiff alleges simply that a strip search occurred in the hallway without elaborating on the facts surrounding it. *Id.* at 8.

These allegations are insufficient to state that a strip search occurred within the statutory definition. *See Cook v. Olathe Med. Ctr., Inc.*, 773 F. Supp. 2d 990, 1007 (D. Kan. 2011) (concluding that no strip search occurred in the absence of evidence that the defendants removed or rearranged the plaintiff's clothing). Plaintiff has not alleged that his clothes were removed or rearranged. He has also not alleged that any Defendant visually inspected any area included in the definition of a strip search. Therefore, he has stated conclusions, rather than facts necessary to support his claim. Because Plaintiff has not stated a constitutional violation, Defendants are entitled to qualified immunity. *See Harlow*, 457 U.S. at 818. The Court therefore **recommends** that the claim regarding the first strip search be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 127 (stating that prejudice should not attach when the plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

## f. Second Strip Search

The Tenth Circuit requires a nuanced, fact-intensive inquiry regarding whether a strip search is reasonable under the Fourth Amendment. *See Archuleta v. Wagner*, 523 F.3d 1278, 1283, 1286 n.5 (10th Cir. 2008). The Fourth Amendment "requires a balancing of

the need for the particular search against the invasion of personal rights that the search entails." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559. "There can be no doubt that a strip search is an invasion of personal rights of the first magnitude." *Archuleta*, 523 F.3d at 1283 (quoting *Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir. 1993)).

Defendants concede that a strip search occurred in the room. As noted above, if the result of a search was the procurement of evidence which, if suppressed, would invalidate an outstanding conviction, there is no cause of action under § 1983. *Miller v. Foster*, No. 12-cv-02525-RM-MJW, 2013 WL 7894943, at *2 (D. Colo. Nov. 18, 2013) (holding § 1983 claim alleging unreasonable strip/body cavity search was barred by *Heck* where the search uncovered evidence "uniquely made available as the result of the alleged search" which resulted in conviction for drug possession) (recommendation adopted by *Miller v. Foster*, 12-cv-02525-RM-MJW, 2014 WL 924242 (D. Colo. Mar. 10, 2014)). The evidence seized in the second strip search, i.e. a controlled substance as defined by Colo. Rev. Stat. § 18-18-405, directly resulted in Plaintiff's conviction in Colorado case number 2013CR5373. *Motion* [#32] at 7; *see Motion, Ex. A* [#33-1] at 1. Thus, Plaintiff's claim is barred by *Heck* insofar as it challenges the validity of the search.

The Court may nevertheless analyze the manner in which the search was conducted. *Hampton v. Evans*, No. 11-cv-01415-PAB-CBS, 2012 WL 4442786, at *2 (D. Colo. Sept. 26, 2012) (citation omitted). Plaintiff has not, however, alleged a cognizable theory as to the impropriety of the manner of the search. He frequently asserts that

Defendants violated Denver Police Department regulations throughout the search. *Second Am. Compl.* [#12] at 6, 8. However, mere noncompliance with local police regulations is insufficient to evaluate the constitutionality of police conduct.[10] *Tanberg v. Sholtis*, 401 F.3d 1151, 1163 (10th Cir. 2005).

In his Response, Plaintiff cites *Hodges v. Stanley*, 712 F.2d 34, 35 (2nd Cir. 1983), for the proposition that a strip search can violate Fourth Amendment rights when it immediately follows another strip search. [#48] at 9. As discussed above, Plaintiff has not sufficiently alleged facts suggesting that two separate strip searches occurred. Additionally, there is not a Supreme Court case, a Tenth Circuit case, or the clearly established weight of authority from other courts holding that the law regarding multiple strip searches is as Plaintiff maintains. *See Casey*, 509 F.3d at 1283.

Also in his Response, Plaintiff includes a citation to *Evans v. Stephens*, 407 F.3d 1272, 1281-82 (11th Cir. 2005) (holding that a strip search was unreasonable and conducted "in an abusive fashion" where arrestee was searched in a broom closet, ridiculed, and penetrated with a baton), a case which aggregates factors such as "physical force, anal penetration, unsanitariness of the process, terrifying language, and lack of privacy" to hold a search unreasonable. [#48] at 10. The mention of laughter and the totality of circumstances in this case fail to rise to the level of unreasonable conduct present in *Evans*. Similarly, no circumstances alleged here suggest that the room in which Plaintiff

---

[10] In his Response, Plaintiff also alleges that Defendants' conduct also violated Colo. Rev. Stat. § 16-3-405(4) governing the propriety of strip searches. [#48] at 9. Mere violation of state law, without more, is a similarly inappropriate standard for evaluating constitutionality. *See Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)) (holding that no § 1983 claim is cognizable from allegations of the violation of state statutes).

was searched or the method used was unsanitary despite his conclusory allegation.

Thus, Plaintiff fails to allege grounds that would constitute a Fourth Amendment violation and Defendants are entitled to qualified immunity. *See Harlow*, 457 U.S. at 818. The Court therefore **recommends** that Plaintiff's unreasonable search and seizure claim regarding the second strip search be **dismissed without prejudice**. See *Reynoldson*, 907 F.2d at 127 (stating that prejudice should not attach when the plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

### 2.   Excessive Force Claims

As a preliminary matter, Plaintiff asserts at various points that Defendants' use of excessive force violated his Fifth and Fourteenth Amendment rights in addition to his Fourth Amendment rights. *Second Am. Compl.* [#12] at 6. It is unclear how Plaintiff intends to invoke the Fifth Amendment in this context, but even a liberal construction of his Second Amended Complaint [#12] to allege a violation of due process is barred by the context of the matter because Defendants are state employees. *Wardle v. Ute Indian Tribe*, 623 F.2d 670, 673 (10th Cir. 1980) ("[T]he Fifth Amendment acts as a limit on federal government action only"). The Fourteenth Amendment is similarly inappropriate in this context. *Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) (citations omitted) (observing that Fourteenth Amendment analysis appropriate only in excessive force cases where neither Fourth nor Eighth Amendment applies). Fourth Amendment reasonableness, not more generalized substantive due process, governs excessive force claims involving pretrial detainees arrested without a warrant. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Thus, Plaintiff's excessive force claims will be analyzed solely in the context of the Fourth

Amendment's proscription against excessive force. *See Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) ("[W]e have held that the Fourth Amendment, not the Fourteenth, governs excessive force claims arising from 'treatment of [an] arrestee detained without a warrant' and 'prior to any probable cause hearing'" (emphasis omitted)).

A Fourth Amendment excessive force claim requires that Plaintiff "show both that a 'seizure' occurred and that the seizure was 'unreasonable.'" *Graham*, 490 U.S. at 395 (citing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989)). The reasonableness assessment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotations omitted). It is well-settled that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). In order to recover on an excessive force claim, a plaintiff must show (1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional. *Cortez v. McCauley*, 478 F.3d 1108, 1129 n.25 (10th Cir. 2007). The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham*, 490 U.S. at 396.

Plaintiff broadly alleges three instances where force was used against him: (1) Defendant Rogers removed him from his vehicle by grabbing him by his clothes and then forced him to the ground; (2) Defendant Robledo lifted him up by the handcuffs from a supine position to a standing position; and (3) Defendants Robledo and Bauer pressed his

face into a desk while Defendant Rogers strip searched him.

As a preliminary matter, Defendants' arguments for dismissal of these claims rely heavily on the exhibits discussed at length in Part III.A.  For the reasons stated above, these documents are not considered in the following discussion.

### a.    Removal from Vehicle

Plaintiff alleges that he suffered "pain, suffering, physical and emotional injury, [and] humiliation" as a result of Defendant Rogers grabbing him from his vehicle and forcing him to the ground.  *Second Am. Compl.* [#12] at 6.  This act is later characterized as Defendant Rogers throwing him to the ground.  *Id.* at 7.  Plaintiff claims that, throughout this incident, Defendants Robledo and Bauer had their weapons pointed at him.  *Id.* at 4.  Although the Tenth Circuit has declined to require "visible cuts, bruises, abrasions, or scars" for excessive force claims, *see Holland v. Harrington*, 268 F.3d 1179, 1195 (10th Cir. 2001), the absence of injury in the context of the totality of the circumstances may suggest the absence of excessive force.  *Cortez*, 478 F.3d at 1129 n.24; see also *Grass v. Johnson*, 322 F. App'x 586, 590 (10th Cir. 2009) (holding that "an excessive force claim is not dependant on the physical injury or even the physical contact, but on 'patently unreasonable conduct' by the arresting officer" (quoting *Cortez*, 478 F.3d at 1131)).  Other than broad, conclusory statements, Plaintiff has not alleged that he was injured or that his injuries were caused by Defendant Rogers's conduct, as he must to survive dismissal of the claim.

Similarly, Plaintiff has failed to allege sufficient facts to establish that Defendants used greater force than was necessary against him, as he must for a claim of excessive force.  *Cortez*, 478 F.3d at 1129 n.25.  Officers are given leeway to use force when

preparing an arrestee for a pat-down search. *See Gross v. Pirtle*, 245 F.3d 1151, 1158 (10th Cir. 2001) (citing *Dixon v. Reicher*, 922 F.2d 1456, 1462 (10th Cir. 1991)) (holding that officer who kicked arrestee in order to position him for a pat-down did not use excessive force). Similarly, officers may use reasonable force while removing a suspected criminal from a vehicle. *See Latta v. Keryte*, 118 F.3d 693, 701 (10th Cir. 1997). Thus, Plaintiff has failed to state a constitutional violation, and Defendant Rogers is entitled to qualified immunity. *See Harlow*, 457 U.S. at 818. The Court therefore **recommends** that Plaintiff's Fourth Amendment claim regarding his removal from his vehicle be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 127 (stating that prejudice should not attach when the plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

### b.    Pulling on Handcuffs

Plaintiff alleges that, while he was detained on the ground, Defendant Robledo grabbed him by the handcuffs and "painfully pull[ed] [P]laintiff to a standing position." *Second Am. Compl.* [#12] at 6. Plaintiff has not included enough factual background regarding this incident to demonstrate that Defendant Robledo violated clearly established law. Plaintiff must claim some injury caused by this act that is not de minimis. *Cortez*, 478 F.3d at 1129 n.25. He has not described the nature of his injuries, only that he felt "excruciating pain." *Second Am. Compl.* [#12] at 4. A mere allegation that handcuffs caused pain is insufficient. *Cortez*, 478 F.3d at 1129 (holding that allegation of pain supported by affidavit stating that handcuffs left red marks on the plaintiff's wrists for days was insufficient to state a claim of excessive force); *see also Koch v. City of Del City*, 660

F.3d 1228, 1247 (10th Cir. 2011) (holding that medical reports of sores and arms on the plaintiff's wrists were insufficient to state a claim of excessive force).  Accordingly, Plaintiff has not stated a constitutional violation and Defendant Robledo is entitled to qualified immunity.  *See Harlow*, 457 U.S. at 818.  The Court therefore **recommends** that Plaintiff's Fourth Amendment excessive force claim against Defendant Robledo regarding pulling Plaintiff to a standing position be **dismissed without prejudice**.  *See Reynoldson*, 907 F.2d at 127 (stating that prejudice should not attach when the plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

### c.    Second Strip Search

Plaintiff alleges that Defendants Robledo and Bauer held him over a chair, pressed his face against a desk, and caused him "excruciating pain."  He also alleges that Defendant Rogers, while conducting the strip search, placed his "hand and fingers into [P]laintiff's anus." Although Plaintiff alleges that excessive force was used, it is unclear how the conduct was excessive.  Plaintiff does not allege that he sustained any particular injury as a result of this search.  Nor does he allege that he mentioned his discomfort to officers or that they refused to accommodate him.   Other courts have dismissed claims of excessive force in the context of a strip search if the complainant does not provide allegations of injury independent of the search itself.  *See, e.g.*, *Hamilton v. City of Berkeley*, No. 13-cv-04403-JCS11, 2013 WL 6155818, at *4 (N.D. Cal. Nov. 22, 2013) (dismissing claim of excessive force in the context of a strip search as better analyzed under the search prong because the allegation of excessive force stemmed more from concerns of the search's initial validity).  Because, as discussed above, the validity of the

strip search is *Heck*-barred, and no stated allegations give rise to a claim that the force applied was excessive, Plaintiff has failed to state a Fourth Amendment violation for excessive force in regards to the second strip search.   Thus, Defendants are entitled to qualified immunity from this claim.   *See Harlow*, 457 U.S. at 818.   The Court therefore **recommends** that Plaintiff's Fourth Amendment claim against all Defendants for excessive force used in the second strip search be **dismissed without prejudice**.   *See Reynoldson*, 907 F.2d at 127 (stating that prejudice should not attach when the plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

## D.   Official Capacity Claims

As stated above, an action against a police officer in his official capacity should be treated as a suit against the entity, not the officer.   *Kentucky v. Graham*, 473 U.S. at 167 n.14.   A suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same.   *Watson v. City of Kan. City*, 857 F.2d 690, 695 (10th Cir. 1988).   To establish liability for defendants in their official capacities, a plaintiff must show that a policy or custom exists and that there is a direct link between the policy or custom and the injury alleged.   *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).   To hold a municipality liable for a constitutional violation, a plaintiff must show (1) that a city employee committed a constitutional violation and (2) that a municipal policy or custom was the "moving force" behind the constitutional violation.   *See Cordova v. Aragon*, 569 F.3d 1183, 1193 (10th Cir. 2009).

Defendants argue that the claims against them in their official capacities should be

dismissed. *Motion* [#33] at 21.  They argue that the Court has already dismissed claims against the City and County of Denver for failure to state a policy or custom linked to the alleged deprivation of his rights, *Order* [#15] at 2, and that Plaintiff's official capacity theory here is duplicative of that claim.  *Motion* [#33] at 21.  Because Plaintiff has again failed to allege any policy or custom that caused an injury, the Court agrees.

The only mention of a policy or custom, seemingly referencing the second strip search, is that "police employee[ ]s are to follow polic[i]es and procedures set forth by the[ir] department."  *Second Am. Compl.* [#12] at 8.  Plaintiff is therefore arguing that his rights were violated because Defendants *did not* follow Colorado law and Denver Police Department regulations while conducting their strip search.  Thus, Plaintiff acknowledges that policies in place were not the "moving force" behind the alleged deprivations of his constitutional rights, but rather a "force" that he alleges failed to stop that harm.  *See Cordova*, 569 F.3d at 1193.  Also, as discussed above, allegations of violation of police regulations are insufficient to evaluate the constitutionality of police conduct.  *See Tanberg*, 401 F.3d at 1163.  The Court finds that Plaintiff has once again failed to state a claim against Defendants in their official capacities.  *See Meek v. Crews*, No. 13-cv-01064-MSK-KLM, 2014 WL 1056581, at *4 (D. Colo. Mar. 19, 2014) (dismissing an official capacity claim because the plaintiff failed to identify a municipal policy or custom that caused the plaintiff's injury); *Dalcour v. City of Lakewood*, No. 08-cv-00747-MSK-KLM, 2009 WL 3162235, at *3 (D. Colo. Sept. 30, 2009) (dismissing official capacity claims against a city official because the plaintiff failed to allege that the official's conduct was the result of a municipal policy or custom).

The Court therefore **recommends** that claims against Defendants in their official

capacities be **dismissed with prejudice**. Because Plaintiff has already twice been directed to amend his pleadings to cure this deficiency and the City and County of Denver has already been dismissed from this suit for the same reasons, prejudice should attach. *See Order* [#7] at 3-4 (directing Plaintiff to state a policy or custom to cure his defective Complaint); *Order* [#15] at 1-2 (dismissing the City and County of Denver from this suit after Plaintiff failed to state a policy or custom linked to the alleged deprivation of his rights); *Sheldon v. Vermonty*, 269 F.3d 1202, 1207 n.5 (10th Cir. 2001) (stating that dismissal with prejudice is appropriate where the plaintiff's amended pleadings fail to cure deficiencies in his claims).

## IV. Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion to Dismiss [#32] be **GRANTED**.

(1) with respect to Plaintiff's request for retrospective declaratory relief, claims of unreasonable search and seizure, and claims of excessive force *except for* the claim regarding the search of Plaintiff's cell phone, the Court **recommends** that these claims be **dismissed without prejudice**.

(2) with respect to Plaintiff's claim of unreasonable search of his cell phone and claims against Defendants in their official capacities, the Court **recommends** that these claims be **dismissed with prejudice**.

IT IS HEREBY **ORDERED** that, pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is

assigned.   A party's failure to serve and file specific, written objections waives de novo

review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*,

474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal

questions.   *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v.*

*Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this

Recommendation must be both timely and specific to preserve an issue for de novo review

by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*,

73 F.3d 1057, 1060 (10th Cir. 1996).


Dated: June 29, 2015                    BY THE COURT:

                                        Kristen L.  Mix
                                        United States Magistrate Judge